

**SIGNED this 26th day of July, 2013.**

_____
**TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | No. 13-11086-TMD |
| | § | |
| AMRCO, INC., | § | |
| | § | Chapter 11 |
| Debtor. | § | |

**MEMORANDUM OPINION**

Before the Court is the Motion for Order Determining That Automatic Stay Does Not Apply or Has Already Terminated or, in the Alternative, for Relief from the Automatic Stay (the "Motion") [Dkt. No. 4], filed on June 5, 2013, by Shoal Creek Capital, LLC ("Shoal Creek"). The Court held a hearing on the Motion on June 10, 2013 (the "Hearing"), and Shoal Creek and the Debtor, AMRCO, Inc. ("AMRCO"), filed briefs addressing the core legal questions in dispute. The Court has considered these post-hearing briefs, in addition to the Motion, the evidence and arguments presented at the Hearing, and the relevant case law. For the reasons stated in this Memorandum Opinion, the Court will DENY Shoal Creek's Motion in part and will set a hearing to address the remaining relief requested.

1

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## I.     BACKGROUND

Shoal Creek loaned AMRCO the sum of $175,000 in April of 2012. In return, Shoal Creek accepted a real estate lien note from AMRCO, secured by a duly recorded Deed of Trust on an undeveloped lot (the "Property") located at 3604 Robbins Road, Austin, Texas. The Property was essentially AMRCO's only asset, and AMRCO's bankruptcy filing listed Shoal Creek as its only creditor. *See* Voluntary Petition, Scheds. A-H [Dkt. No. 1].[1] After AMRCO failed to make timely payments on the note, Shoal Creek declared default and initiated foreclosure on the Property.

Foreclosure was scheduled for June 4, 2013. After unsuccessfully seeking a temporary restraining order from the Texas state court to halt the sale, Mr. Mohammad Assadi, AMRCO's President, filed AMRCO's petition for relief under chapter 11 of title 11 of the United States Code (the "Code"), at 10:22 a.m. on June 4, 2013.[2] This Memorandum Opinion resolves the

---

[1] At the Hearing, counsel for AMRCO suggested that pursuant to an amendment to AMRCO's schedules, another small creditor of AMRCO would be added, but such amendment has not yet been filed, and in any case, the additional claim is of no relevance to this ruling.

[2] The bankruptcy petition was filed by the corporation "pro se," or in other words, by a non-attorney officer of the corporation, Mr. Assadi. *See* Voluntary Petition, at 3 [Dkt. No. 1]. Thus, the filing violated "the well-settled rule of law that a corporation cannot appear in federal court unless represented by a licensed attorney," *Memon v. Allied Domecq QSR*, 385 F.3d 871, 873 (5th Cir. 2004), a rule that applies to proceedings under the Code, *see, e.g.*, *K.M.A., Inc. v. Gen. Motors Acceptance Corp. (In re K.M.A., Inc.)*, 652 F.2d 398 (5th Cir. Unit B 1981) (holding that bankruptcy appeal could not be brought by non-attorney on behalf of corporation).
AMRCO has since retained counsel. Prior to AMRCO's hiring of counsel, the Trustee filed a motion [Dkt. No. 6] requesting that the Court dismiss this case due to the lack of attorney representation of AMRCO, but that motion has been held to be moot. *See* Order [Dkt. No. 21]. After counsel was retained, no party argued that this Court should find that the case has not been duly commenced, or that the filing should be considered void *ab initio*. Nor has the Court found any governing case law ordaining such an outcome. To the contrary, the case law appears to support allowing the "cure" of a defective filing upon the prompt retention of counsel. *See, e.g.*,

parties' dispute over whether, at the moment of filing, AMRCO's bankruptcy state included the Property, or whether the Property had been sold already.

Shoal Creek seeks relief in the form of a "comfort order" affirming that the automatic stay provided for in § 362 of the Code did not apply to the Property. (In the alternative, it applies for relief from the automatic stay pursuant to § 362(d), although this issue has not been briefed or argued in any detail.) Shoal Creek claims that prior to the time of the filing, it had purchased the Property at a non-judicial foreclosure sale (the "Foreclosure Sale"), undertaken and completed no later than 10:12 a.m. on June 4, 2013, minutes before AMRCO's filing.[3]

The Foreclosure Sale was conducted by a real estate attorney named Jeremy Adam Kruger. Mr. Kruger formerly practiced law as Jeremy Adam Kruger, PC, a professional corporation that was named as Trustee in the Notice of Foreclosure and the Deed of Trust in this case. He has since moved to a different firm, Kruger Carson PLLC ("Kruger Carson"). Kruger Carson was named as Substitute Trustee in the Notice of Foreclosure, and it was as a member of Kruger Carson that Mr. Kruger conducted the Foreclosure Sale. At the Foreclosure Sale, Shoal Creek, which was represented at the sale by the same Mr. Kruger, was the only bidder. Shoal

---

*Memon*, 385 F.3d at 874 ("In virtually every case in which a district court dismissed the claims (or struck the pleadings) of a corporation that appeared without counsel, the court expressly warned the corporation that it must retain counsel or formally ordered it to do so before dismissing the case."); *K.M.A.*, 652 F.2d at 398 (ordering appeal dismissed "unless" attorney appeared on its behalf within thirty days); *Orsini v. Interiors of Yesterday, LLC (In re Interiors of Yesterday, LLC)*, 284 B.R. 19, 25 (Bankr. D. Conn. 2002) (finding that non-lawyer's filing "of a voluntary petition in bankruptcy" on behalf of a corporation was not "void *ab initio*"). In light of this case law, this Court predicates its ruling on the finding that AMRCO's filing took place at the date and time listed above, notwithstanding that the case was improperly filed by a non-attorney.

[3] Although Shoal Creek admits the deed was not recorded before the bankruptcy petition was filed, this fact does not matter for the issue at hand. If "a valid foreclosure sale" had taken place before the filing, "the debtor no longer [would have had] any legal or equitable interest in the [P]roperty," and the Property would not have "become property of the bankruptcy estate." *Munoz v. James B. Nutter & Co. (In re Munoz)*, No. 10-31627, Adv. No. 10-3039, 2011 WL 710501, at *15 (Bankr. W.D. Tex. Feb. 22, 2011).

Creek bid in the full amount then owing to it, a sum amounting to $192,076.53.

The Court finds that Mr. Kruger gave credible and reliable testimony at the Hearing. Accordingly, AMRCO's attempts to manufacture doubt concerning whether the Foreclosure Sale took place at the time and in the manner attested to by Mr. Kruger fail. The remaining factual findings needed to support the Court's ruling are presented in due course below.

## II. ANALYSIS

AMRCO maintains that the Foreclosure Sale was invalid for three reasons: (1) Mr. Kruger's *firm* was appointed as Substitute Trustee, not Mr. Kruger himself, and therefore he had no right to act as Substitute Trustee under Texas law; (2) the Foreclosure Sale was conducted "unfairly," and "with irregularities," such that there was a "gross shortfall" in the price attained at the sale sufficient to void the Foreclosure Sale; (3) the Substitute Trustee's address was not included on the Notice of Foreclosure Sale, as required by Texas statute. *See* Debtor's Post-Hearing Br. at 4-8 [Dkt. No. 15].

AMRCO's first two arguments have no merit.

As to the first argument, contrary to AMRCO's position, Mr. Kruger validly acted as Substitute Trustee on behalf of his firm. While it is true that the Notice of Foreclosure appointed Kruger Carson, and not Mr. Kruger individually, as Substitute Trustee, that does not invalidate Mr. Kruger's exercise of authority at the Foreclosure Sale. Law firms act through their members. AMRCO has not denied that Mr. Kruger was a member of Kruger Carson. If a law firm can act as Substitute Trustee, then its members can represent it in that capacity.

AMRCO's argument amounts to an assertion that only natural persons can be appointed as Trustee or Substitute Trustee under Texas law. AMRCO provides no legal support for this assertion, which is plainly wrong. The relevant section of the Texas Property Code allows for a

4

"person" to be appointed as Trustee or Substitute Trustee. TEX. PROP. CODE § 51.0001(7), (8). Statutes commonly define "person" or "persons" to include artificial entities such as corporations and partnerships. *See, e.g.*, TEX. PROP. CODE § 111.004(10) (Texas Trust Code, defining person to include corporations, partnerships, and other artificial persons); 11 U.S.C. § 101(41) (Bankruptcy Code, defining "person" to include corporations, partnerships, and other artificial persons). The law on § 51 of the Texas Property Code makes clear that corporations are "persons" that can serve as "mortgage servicers" and "mortgagees." *See, e.g.*, *Jones v. Deutsche Bank Nat. Trust Co.*, No. 3:12-CV-3929-L, 2013 WL 3455716, at *8 (N.D. Tex. July 9, 2013) (treating Deutsche Bank is a "person" under this section of the Texas Property Code). To interpret the statute such that "person" means "artificial *or* natural person" for the purpose of Texas Property Code § 51.0001(3) and (4), but is restricted to "natural person *only*" for the purpose of Texas Property Code § 51.0001(7) and (8), would "violate[ ] the established canon of construction that similar language contained within the same section of a statute must be accorded a consistent meaning." *Nat'l Credit Union Admin. v. First Nat. Bank & Trust Co.*, 522 U.S. 479, 501 (1998). The inevitable conclusion, then, is that artificial persons are included within the definition of "person" under this section of the Texas Property Code, and may therefore serve as Trustee or Substitute Trustee. This conclusion is supported by the case law. *See, e.g.*, *Pate v. Zientz*, No. 4-09-CV-643, 2011 WL 1576943, at *5 (E.D. Tex. Mar. 9, 2011) (report and recommendation) (holding that Deutsche Bank validly acted as trustee under a deed of trust), *adopted by* 2011 WL 1575493 (E.D. Tex. Apr. 25, 2011). AMRCO has failed to show that Kruger Carson could not act as Substitute Trustee, or that Mr. Kruger did not validly represent Kruger Carson. The Court finds the Mr. Kruger validly represented Kruger Carson, the Substitute Trustee, at the Foreclosure Sale.

As to AMRCO's second argument, there is no evidence either that the sale was "unfairly" conducted or that the price received was inadequate, much less "grossly" inadequate. Mr. Kruger's gave credible testimony that the Foreclosure Sale was conducted fairly and in accordance with law. AMRCO's arguments amount, almost entirely, to mere speculation and innuendo unsupported by any evidence. And even if the Foreclosure Sale had been "unfairly" conducted, or "with irregularities," AMRCO fails to show that the price received at the sale was "grossly inadequate." The Travis County Central Appraisal District values the Property at $125,000. Shoal Creek bid in the full amount of indebtedness as of the date of the Foreclosure Sale, $192,076.53, almost seventy thousand dollars in excess of the appraisal district valuation of the Property. In its post-hearing brief—but without citation to the record—AMRCO has claimed that the "fair market price" of the Property is $530,000. Debtor's Post-Hearing Br. at 8. The only possible evidence of this "fair market price" is the testimony of a real estate broker named Vance Powell, who offered testimony for AMRCO at the Hearing. Mr. Powell claimed that he was "marketing" the Property and had shown it to a potential buyer recently. Providing no further detail or support, Mr. Powell vaguely recollected that "the price quoted to the potential purchaser was, like, $533,000," and, when asked again what the price was, stated uncertainly, "I believe it's $533,000." Although he testified that he was a designated appraiser who made his primary living on appraisals, Mr. Powell did *not* say that he "valued" or "appraised" the land at this sum, nor did he give any basis (such as consideration of comparable sales) that would allow him to offer a reliable valuation of the property. While the Court does not accept the Travis County Central Appraisal District's appraisal as conclusive evidence of value, the appraisal has some probative value,[4] whereas, by contrast, the Court does not find Mr. Powell's testimony to

---

[4] While several courts have indicated that appraisal district valuations cannot be considered as

6

be probative of market value at all. As a result, and without prejudging any future valuation testimony or findings, the Court finds that the AMRCO has failed to show that the value bid in for the Property by Shoal Creek at the Foreclosure Sale was inadequate, much less "grossly inadequate."

Unlike its other points, AMRCO's final point presents a close question of law. Non-judicial foreclosure sales in Texas are governed in part by Texas Property Code § 51.002, "Sale of Real Property Under Contract Lien." This section requires that a notice of foreclosure sale be given publicly and as a matter of legal record, pursuant to statutory requirements. Moreover, a later section of the Texas Property Code requires that "[t]he name *and a street address* for a trustee or substitute trustees shall be disclosed on the notice required by Section 51.002(b)." TEX. PROP. CODE § 51.0075 (emphasis added).[5]

---

probative evidence of market value, *see, e.g.*, *Penrod v. Bank of N.Y. Mellon*, 824 F. Supp. 2d 754, 760 (S.D. Tex. 2011) (tax authority appraisal is "relevant to valuation for taxation purposes only" and not to "establish market value"); *Poswalk v. GMAC Mortg., LLC*, No. 3:11-CV-0465-D, 2012 WL 2193982, at *3 (N.D. Tex. June 15, 2012) (citing *Penrod*, in dicta, for the rule that appraisals cannot be considered evidence of value in Texas), these cases rely on Texas state court precedent, *see Hous. Lighting & Power Co. v. Fisher*, 559 S.W.2d 682, 686 (Tex. Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e .), which pre-dates the adoption of the Texas Rules of Evidence, and no longer accurately represents Texas law. Under current Texas law, unlike under previous law—and at least when the evidence is not objected to on hearsay grounds—tax appraisals do provide some probative evidence of value. This fact has been recognized by numerous state and federal courts. *See, e.g.*, *F.D.I.C. v. Ambika Inv. Corp.*, 42 F.3d 641, 1994 WL 708818, at *3 (5th Cir. Dec. 1, 1994) (affirming a holding that unlike in "older Texas cases," due to "comprehensive changes in the Texas tax appraisal system," tax appraisals are probative of value); *In re Presto*, 376 B.R. 554, 573 (Bankr. S.D. Tex. 2007) (accepting appraisal as having some probative value); *Smith v. Grayson*, No. 03-10-00238-CV, 2011 WL 4924073, at *11 (Tex. Civ. App.—Austin Oct. 12, 2011) (explaining change in Texas evidence law and allowing use of appraisal district valuation as "some probative evidence" of value, when it was admitted without hearsay objection); *In re Marriage of C.A.S. & D.P.S.*, No. 05-11-01338-CV, 2013 WL 3204314, at *13 (Tex. Civ. App.—Dallas June 26, 2013) (same). In any case, even without any consideration of the appraisal district valuation evidence, the Court's ruling would be unchanged, given the complete lack of any credible evidence of a significantly higher value for the Property.
[5] The Deed of Trust governing AMRCO and Shoal Creek's obligations in this case expressly requires that in the event foreclosure is warranted, Shoal Creek or its agent must "cause notice of

As noted above, at the Foreclosure Sale, Mr. Kruger was acting as Substitute Trustee on behalf of his law firm, Kruger Carson. Kruger Carson's mailing address is given on the duly recorded Appointment of Substitute Trustee as "901 S. MoPac Expressway, Building 1, Suite 220, Austin, Travis County, Texas 78746." This address is *not* "disclosed" on the Notice of Foreclosure, as required by § 51.0075. AMRCO claims that this violation of § 51.0075 renders the Foreclosure Sale void. AMRCO rightly notes that Texas courts have emphasized that "*strict compliance* with the notice requirements in a deed of trust is necessary for a trustee to invoke the power of sale in a foreclosure," *G4 Trust v. Consol. Gasoline*, No. 02-10-00404-CV, 2011 WL 3835656, at * 3 (Tex. App.—Fort Worth Aug. 31, 2011, pet. den'd) (emphasis added); *see also Univ. Sav. Assoc. v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982) ("[T]he terms set out in a deed of trust must be strictly followed.").

Shoal Creek retorts that the address-disclosure requirement was substantially complied with. Before joining Kruger Carson, Mr. Kruger practiced law through a professional corporation, Jeremy Adam Kruger PC, which was appointed Trustee under the Deed of Trust—where its address was listed. The Deed of Trust was attached to the publicly posted Notice of Foreclosure. Jeremy Adam Kruger PC's office had the same address that Kruger Carson now does. Thus, the Substitute Trustee's address was contained in the Deed of Trust, and thus, the Substitute Trustee's was "disclosed" in the Notice of Foreclosure—albeit only in an attachment, and labeled as the address of the Trustee. Shoal Creek adds that the address was also included on a duly recorded Appointment of Substitute Trustee (dated the same day at the Notice of Foreclosure), and that the address was linked to the Substitute Trustee on that document. Finally, Shoal Creek asserts that the Substitute Trustee's address was printed on the Kruger

---

the foreclosure sale to be given as provided by the TEXAS PROPERTY CODE as then in effect." Deed of Trust ¶ B.6.a.

8

Carson envelope in which the Notice of Foreclosure was sent to AMRCO.

Taken together, as Shoal Creek suggests, these facts amount to something close to substantial compliance with the statutory requirement that the Substitute Trustee's address be included in the Notice of Foreclosure. And it is true that, as a practical matter, neither AMRCO, nor Mr. Assadi, nor any potential bidder would have any problem locating the Substitute Trustee based on the information that was publicly available.[6] Indeed, it is difficult to imagine how any party could be adversely affected by the deficiency in the Notice of Foreclosure under these circumstances.

Thus, to void the Foreclosure Sale entirely as a result of the failure to include the Substitute Trustee's address on the Notice of Foreclosure might seem to take "strict compliance" too far. The Supreme Court of Texas stated, in the recent case of *Kourosh Hemyari v. Stephens*, that "minor defects in an otherwise valid foreclosure sale do not void it." 355 S.W.3d 623, 628 (Tex. 2011). In *Kourosh*, the Supreme Court refused to invalidate a foreclosure sale on the basis that the signee of a deed of trust and a substitute trustee's deed was identified, on the signature line of both documents, only by his name and not also by his capacity as general partner of the corporate entities for which he was signing the documents. *Id*. at 627-28. The Supreme Court noted that "the mistake was so obvious from the face of the deed as to be harmless." *Id*. at 628. It observed as well that the alleged defect did not "truly" involve "a failure to comply with the deed of trust's terms, but rather . . . inconsistencies in the deed of trust itself." *Id*.

Unlike *Kourosh*, the fault that AMRCO has identified does "truly" involve "a failure to comply with the deed of trust's terms." *Id*. Still, because this is arguably a "minor defect[ ]," Shoal Creek's argument that it should not void the Foreclosure Sale has considerable force.

---

[6] Evidence shows that Mr. Assadi and his company were well aware of the identity and address of the Substitute Trustee, and of the time and location of the Foreclosure Sale.

However, AMRCO has identified a recent case from the Court of Appeals of Texas in Fort Worth, *G4 Trust v. Consolidated Gasoline*, in which the court faced almost exactly the question before this Court—and decided it in favor of the position advanced by AMRCO. No. 02-10-404-CV, 2011 WL 3835656 (Tex. Civ. App.—Fort Worth Aug. 31, 2011). In *G4 Trust*, a notice of foreclosure sale omitted the address of the trustee and substitute trustee. 2011 WL 3835656, at *3.[7] For this reason, and citing the requirement that notice provisions must be complied with strictly, the *G4 Trust* court invalidated the foreclosure sale. The *G4 Trust* court also faced arguments similar to those that Shoal Creek has presented regarding the (lack of) harm wrought upon the defaulting debtor by a notice defect in the otherwise lawful foreclosure process. The court explained that those equitable arguments, or the observation that the omitted address was readily available outside of the actual Notice of Foreclosure, would not hold sway:

> CGI contends that the August 12 notice complied with Texas law . . . because JRP's president knew Bradford's address and because Bradford's cover letter "contains the required information." However, as discussed above, section 51.0075(e) requires disclosure of a "street address" for the trustee or substitute trustee in the notice. *See* TEX. PROP. CODE ANN. § 51.0075(e). Neither the notice nor the cover letter contained Bradford's street address. While we are not blind to the equities of this dispute—as the note-holder, CGI was entitled to be made whole—we are constrained to hold that the sale is void because strict compliance is required to invoke power of sale under a deed of trust.

*G4 Trust*, 2011 WL 3835656, at *3 n. 4.[8]

---

[7] *G4 Trust* was complicated by the fact that, unlike the Deed of Trust in this case, the *G4 Trust* deed of trust was executed prior to the passage of the statutory requirement of inclusion of the address of the trustee in the notice of foreclosure, so there was a question of whether the statutory requirement applied retroactively to cover foreclosures under the deed of trust. *See G4 Trust*, 2011 WL 3835656, at *2-*3. The court held it did. *Id.*

[8] It bears noting that *G4 Trust* and *Kourosh* should not be viewed as conflicting with one another (nor, if they were in conflict, would this Court fail to follow the ruling of the Texas Supreme Court). *G4 Trust* was decided on August 31, 2011, just before *Kourosh*, which was decided on October 21, 2011, but rehearing in *G4 Trust* was denied on October 27, 2011, six days *after Kourosh* was released, which indicates that the appellate court had at least some chance to revise its ruling in light of Kourosh and chose not to do so. What is more, the Texas Supreme Court

On this close question of state law, the Court declines to substitute its own judgment for that of a Texas appellate court that has spoken recently and persuasively on this precise question. The Court is "constrained to hold that the sale is void." *Id*. Accordingly, the Property remained a part of the estate upon the filing of AMRCO's petition for relief. Although this result may seem overly technical or formalistic, it appears to be required by Texas law at this time. And mortgagees can avoid this result by taking greater care to comply with each requirement of the Texas foreclosure statute.

### III. CONCLUSION

This Court DENIES Shoal Creek's Motion in part. Because the Foreclosure Sale was void under Texas law, the Property formed part of the AMRCO bankruptcy estate at the time of the filing of the petition for relief in this case.

The Court reserves judgment on the remaining portion of Shoal Creek's Motion, in which it requests relief from the automatic stay. Neither party has properly briefed, argued, or presented evidence on this issue. The Court will hold a hearing on whether the stay should be lifted under 11 U.S.C. § 362(d)(1) to allow Shoal Creek to pursue its legal remedies against AMRCO and the Property, and if so, for how long that lift-stay order will be stayed (if at all), pursuant to Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure. The Court will set a hearing and establish a briefing schedule on these issues by Order to follow.

---

denied a petition for review in *G4 Trust* and then denied rehearing on the petition for review. It took both of these actions long after its opinion in *Kourosh* was released, providing further evidence that *G4 Trust* remains good law even in light of *Kourosh*. *See* Supreme Court of Texas, Orders on Petitions for Review, Orders Pronounced May 11, 2012, No. 11-0992, available at www.supreme.courts.state.tx.us/historical/2012/May/051112.htm (denying petition for review review); Supreme Court of Texas, Orders on Motions for Rehearing, Orders Pronounced July 9, 2012, No. 11-0992, available at www.supreme.courts.state.tx.us/historical/2012/jul/070612.htm (denying rehearing of denial of petition for review).